NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN YAO GAMADO, Petitioner,

v.

MICHAEL CHERTOFF, et al., Respondents.

Civil Action No. 07-4217 (JLL)

**OPINION**

**APPEARANCES:**

Petitioner pro se
Martin Yao Gamado
Varick Federal Det. Fac.
201 Varick Street
4th Floor
New York, NY 10014

Counsel for Respondents
Peter G. O'Malley
Asst. U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ 07102

**LINARES**, District Judge

Petitioner Martin Yao Gamado, an alien currently detained at Varick Federal Detention Facility in New York City, New York, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] The respondents are Willis Morton, Warden of

[1] Section 2241 provides in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
> (c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Bergen County Jail in Hackensack, New Jersey, where Petitioner was confined at the time he filed the Petition, and various federal officials.

Because it is apparent that Petitioner is not entitled to issuance of the writ, the Court will deny the Petition. See 28 U.S.C. § 2243.

## I. BACKGROUND

Petitioner alleges that he is a native of Togo and a citizen of South Africa. Petitioner traveled to the United States from Morocco via Togo and attempted to enter the United States on or about September 27, 2006, by falsely claiming to be a U.S. citizen and presenting a fraudulently obtained U.S. passport. Petitioner was immediately taken into custody.

Petitioner was issued a Notice to Appear on October 16, 2006, pursuant to 8 U.S.C. § 1229a, charging him as being inadmissible and subject to removal under various provisions of the Immigration and Nationality Act. On November 20, 2006, following a hearing, an Immigration Judge ordered Petitioner removed to South Africa, of which Petitioner then claimed to be a citizen. Petitioner waived appeal.

Following entry of the removal order, Petitioner was taken into the custody of the United States Marshals Service for criminal prosecution. He was returned to the custody of the Bureau of Immigration and Customs Enforcement, for removal, on

March 5, 2007. Thereafter, Petitioner was interviewed by consular officials from both South Africa and Togo, as a result of which Petitioner was not able to establish that he is a citizen of South Africa. Accordingly, ICE officials attempted to remove Petitioner to Togo, using a Single-Journey Letter to the Point of Embarkation, pursuant to INA Section 241(b)(1)(A), 8 U.S.C. § 1231(b)(1)(A), which provides that "an alien who arrives at the United States and with respect to whom proceedings under section 240[, 8 U.S.C. § 1229a,] were initiated at the time of such alien's arrival shall be removed to the country in which the alien boarded the vessel or aircraft on which the alien arrived in the United States."

The first attempt to remove Petitioner was made on May 11, 2007, but was aborted when petitioner advised the assigned Immigrant Enforcement Agent that he refused to go. Another attempt to remove Petitioner was made on July 23, 2007. On that occasion, Petitioner was compliant until he reached the TSA security checkpoint, at which time Petitioner enquired about the return of some missing personal property. When advised that the property could not be located, and would be returned if located later, Petitioner then began to yell "Kill me now, kill me here, I'm not going," and otherwise began to make a scene. Because other passengers appeared alarmed, the second removal attempt was aborted.

This Petition followed. While this matter was pending, a third removal attempt was made on October 25, 2007, when Petitioner again refused to go and began to physically struggle with the agents escorting him. The captain of the aircraft, therefore, refused to permit them to board. Petitioner remains in ICE custody. The parties have not advised this Court of any further attempts to accomplish Petitioner's removal.

## II. ANALYSIS

Post-removal-order detention is governed by 8 U.S.C. § 1231(a). Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish

that his removal is not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

Thus, the alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing. Zadvydas, 533 U.S. at 699-701.

However, "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). It is upon this provision that Respondents rely.

Petitioner contends that his refusal to be removed to Togo pursuant to the Single-Journey Letter is justified because (a) his property is missing and (b) Togo has not indicated its consent to his removal there. These arguments are unavailing. Certainly, there is no prohibition against removal based upon missing personal property. Any claim for return of the missing property must be made through the appropriate civil remedies. When an arriving alien is returned to his point of embarkation

pursuant to 8 U.S.C. § 1231(b)(1)(A), no prior consent of the receiving county is required. See Bah v. McElroy, 2004 WL 2072473 (S.D.N.Y. 2004). Nor does the fact that the Immigration Judge ordered Petitioner removed to the country of which he was then believed to be a citizen preclude removal to the place of embarkation under 8 U.S.C. § 1231. Except as provided by provisions not relevant here,

> an alien who arrives at the United States and with respect to whom proceedings under section 1229a of this title were initiated at the time of such alien's arrival shall be removed to the country in which the alien boarded the vessel or aircraft on which the alien arrived in the United States.

8 U.S.C. § 1231(b)(1)(A). Accordingly, it is clear that Petitioner has acted to prevent his removal. Petitioner has not established that he is entitled to be released at this time.

As a caveat to this ruling, however, the Court notes that the government bears some responsibility for articulating any information it requires from Petitioner to facilitate his removal to Togo or South Africa. In addition, the government bears some responsibility for continuing to make efforts to remove Petitioner. There does not appear to have been any effort to remove Petitioner since October 2007. This Court shall consider a renewed application for relief if, after full cooperation from Petitioner, the government remains unable to effectuate his removal.

## III. CONCLUSION

For the reasons set forth above, the Petition will be denied. An appropriate order follows.

Jose L. Linares
United States District Judge

Dated: 5/12/08